**F I L E D**
CLERK, U.S. DISTRICT COURT

**10/06/2021**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

**(UNDER SEAL)**

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CASEY MAHONEY and<br>JOSEPH PARKINSON,<br><br>          Defendants. | No. 8:21-cr-00183-CJC<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. §§ 220(a)(1), (2):<br>Illegal Remunerations for<br>Referrals to Clinical Treatment<br>Facilities; 18 U.S.C.<br>§ 1956(a)(1)(B)(i): Concealment<br>Money Laundering; 31 U.S.C.<br>§§ 5324(a)(3), (d)(2):<br>Structuring; 21 U.S.C.<br>§§ 841(a)(1), (b)(1)(C):<br>Possession with Intent to<br>Distribute Fentanyl; 18 U.S.C.<br>§ 2: Aiding and Abetting and<br>Causing an Act to be Done; 18<br>U.S.C. § 982, 31 U.S.C. § 5317:<br>Criminal Forfeiture] |

The Grand Jury charges:

### COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1        1.    Defendant CASEY MAHONEY controlled two clinical treatment

2   facilities in Orange County, California, namely, Healing Path Detox

3   LLC ("Healing Path") and Get Real Recovery, Inc. ("Get Real").

4   Healing Path and Get Real were "clinical treatment facilities," as

5   defined in Title 18, United States Code, Section 220(e)(2), and were

6   regulated under state and federal law.  Defendant MAHONEY also

7   controlled a Wells Fargo Bank Account held under the name Healing

8   Path Detox LLC ("the Healing Path Account"), and a Wells Fargo Bank

9   Account held under the name Get Real Recovery, Inc. ("the Get Real

10  Account").

11       2.    Defendant JOSEPH PARKINSON and co-conspirators "Broker 1,"

12  "Broker 2," and Darius Moore (collectively, the "other Brokers") were

13  "body brokers" who referred patients to clinical treatment facilities

14  in Orange County, California, including Healing Path and Get Real, in

15  exchange for kickback payments.

16       3.    Defendant PARKINSON controlled the business entities Star

17  Treatment LLC and Star Treatment Solutions LLC.  Defendant PARKINSON

18  also controlled a First Bank account held under the name Star

19  Treatment LLC ("Parkinson Account 1"), and a J.P. Morgan Chase Bank

20  account held under the name Star Treatment Solutions LLC ("Parkinson

21  Account 2").

22       4.    Broker 1 controlled two business entities ("Business A" and

23  "Business B"), and Broker 2 controlled another business entity

24  ("Business C").  Moore controlled the business entity Moore Recovery

25  Solutions LLC.

26       5.    Defendant MAHONEY hired and oversaw employees at Healing

27  Path and Get Real, whose duties included coordinating the admission

28  of patients referred by defendant PARKINSON and the other Brokers and

1  reviewing kickback amounts owed to them by defendant MAHONEY for

2  patients referred to Healing Path and Get Real over the preceding

3  month.

4       6.   Healing Path and Get Real each serviced patient populations

5  that received health care benefits through, among other entities,

6  Anthem Blue Cross Blue Shield, Aetna Life Insurance Company, Cigna

7  Health and Life Insurance Company, Cigna Behavioral Health Inc., and

8  United Health Group (collectively, the "insurance companies").  The

9  insurance companies were "health care benefit programs," as defined

10  in Title 18, United States Code, Section 24(b), and Title 18, United

11  States Code, Section 220(e)(3).

12  B.   OBJECTS OF THE CONSPIRACY

13       7.   Beginning on a date unknown, but no later than on or about

14  October 24, 2018, and continuing to at least on or about December 15,

15  2020, in Orange County, California, within the Central District of

16  California, and elsewhere, defendants MAHONEY and PARKINSON knowingly

17  conspired with Broker 1, Broker 2, Moore, and others known and

18  unknown to the Grand Jury, to commit offenses against the United

19  States, namely:

20            a.   Soliciting and Receiving Illegal Remunerations for

21  Referrals to Clinical Treatment Facilities, in violation of Title 18,

22  United States Code, Section 220(a)(1); and

23            b.   Paying and Offering Illegal Remunerations for

24  Referrals to Clinical Treatment Facilities, in violation of Title 18,

25  United States Code, Section 220(a)(2).

26  C.   MANNER AND MEANS OF THE CONSPIRACY

27       8.   The objects of the conspiracy were to be accomplished, in

28  substance, as follows:

1          a.    Defendant MAHONEY would pay tens of thousands of

2    dollars per month in kickbacks to defendant PARKINSON and the other

3    Brokers via accounts that they controlled in the names of the

4    business entities that they controlled, both as compensation in

5    exchange for referring patients or patronage to Healing Path and Get

6    Real, and to induce them to continue to refer patients to those

7    facilities.

8          b.    Defendant PARKINSON and the other Brokers would pay a

9    portion of those funds to patients, often in the form of cash, as

10   kickbacks in exchange for staying at Healing Path and Get Real, in

11   amounts that were also determined based on the respective patients'

12   type of insurance, type of treatment, and length of stay.  Defendant

13   MAHONEY knew that defendant PARKINSON and the other Brokers paid such

14   kickbacks to patients in exchange for staying at Healing Path and Get

15   Real, and would encourage them to find ways to withdraw cash from

16   their bank accounts without attracting law enforcement attention.

17         c.    Defendant PARKINSON used Parkinson Accounts 1 and 2 to

18   receive kickbacks for patient referrals to clinical treatment

19   facilities including Healing Path and Get Real, and to withdraw cash

20   used to pay kickbacks to recruited patients in exchange for receiving

21   treatment at such facilities.  Defendant PARKINSON would conceal the

22   nature, ownership, and control of the cash kickbacks paid to patients

23   by withdrawing funds and causing others to withdraw funds from

24   Parkinson Accounts 1 and 2 in transactions structured at or under

25   $10,000.

26         d.    Defendant MAHONEY, on behalf of Healing Path and Get

27   Real, would enter into sham contracts with businesses controlled by

28   defendant PARKINSON and the other Brokers that: (1) purportedly

4

required fixed payments to the respective body broker; (2) purportedly prohibited payments from Healing Path or Get Real based on the "volume or value" of the body broker's patient referrals; and (3) were designed to conceal the nature of the kickback payments.

e.    Defendant MAHONEY and employees at Healing Path and Get Real would meet with the other Brokers, or would communicate with them via an encrypted messaging application, to calculate the respective kickback amounts owed to the other Brokers by defendant MAHONEY for each patient referred to Healing Path and Get Real, based on the patient's type of insurance, the type of treatment the patient purportedly received, and the length of the patient's stay at Healing Path and Get Real.  They would then determine whether the contractual monthly payment to Moore and Broker 1 the prior month overstated or understated the kickback amount that defendant MAHONEY actually owed to each of them.

f.    When defendant MAHONEY accrued a large amount of kickback debt owed to defendant PARKINSON and the other Brokers, defendant MAHONEY would pay those debts (1) by writing checks to them for tens of thousands of dollars beyond what defendant MAHONEY owed under the contracts, and (2) by entering into new, often simultaneous sham contracts with other businesses that the brokers controlled, thus obligating defendant MAHONEY to pay them tens of thousands of dollars in additional funds per month and allowing defendant MAHONEY to further conceal the kickback payments by spreading them across checks to as many as four different businesses or persons in a given month.

g.    To induce Broker 1 to refer patients to Healing Path and Get Real, defendant MAHONEY would pay thousands of dollars per

1    month in additional kickback funds to Broker 1. Defendant MAHONEY

2    would conceal the nature, ownership, and control of these additional

3    kickback payments by paying them to Broker 1 via checks payable to

4    Broker 1's mother, and by falsely writing "Consultant Fee" on the

5    memo line of each check, when in fact Broker 1's mother did not

6    provide any consulting services for defendant MAHONEY or otherwise

7    work for defendant MAHONEY in any way.

8        h.    Healing Path and Get Real would bill and subsequently

9    be reimbursed by the insurance companies for treatment purportedly

10   given to patients referred to the respective facility by defendant

11   PARKINSON and the other Brokers.

12       i.    In total during the conspiracy, defendant MAHONEY

13   would pay at least $2,698,725 in kickbacks to defendant PARKINSON and

14   the other Brokers.

15   D.   OVERT ACTS

16       9.    In furtherance of the conspiracy and to accomplish the

17   objects of the conspiracy, on or about the following dates, defendant

18   MAHONEY, defendant PARKINSON, Broker 1, Broker 2, Moore, and others

19   known and unknown to the Grand Jury, committed and willfully caused

20   others to commit the following overt acts, among others, in Orange

21   County, California, within the Central District of California, and

22   elsewhere:

23                   **Encrypted Communications with Broker 1**

24   Overt Act No. 1:    On April 2, 2020, defendant MAHONEY caused

25   a spreadsheet to be sent to Broker 1 documenting patients who had

26   been referred to Healing Path and Get Real the prior month and the

27   resulting kickbacks that defendant MAHONEY owed to defendant

28   PARKINSON, Broker 1, and Broker 2.

Overt Act No. 2:   On April 29, 2020, defendant MAHONEY caused spreadsheets to be sent to Broker 1 documenting patients who had been referred to Healing Path and Get Real for the respective prior month and the resulting kickbacks that defendant MAHONEY owed to defendant PARKINSON, Broker 1, and Broker 2.

Overt Act No. 3:   On June 1, 2020, defendant MAHONEY caused spreadsheets to be sent to Broker 1 documenting patients who had been referred to Healing Path and Get Real for the respective prior month and the resulting kickbacks that defendant MAHONEY owed to defendant PARKINSON, Broker 1, and Broker 2.

Overt Act No. 4:   On August 8, 2020, defendant MAHONEY caused spreadsheets to be sent to Broker 1 documenting patients who had been referred to Healing Path and Get Real for the respective prior month and the resulting kickbacks that defendant MAHONEY owed to defendant PARKINSON, Broker 1, and Broker 2.

**June 2020 Recording**

Overt Act No. 5:   On June 8, 2020, after defendant MAHONEY received a recorded conversation between Moore and a patient at Get Real, during which Moore arranged to pay the patient between $500 and $750 per week for staying at Get Real, depending on the type of treatment that the patient received, and Moore agreed to give the patient money to buy drugs before starting at Get Real, defendant MAHONEY told Moore not to worry about the recording and asked Moore to be more careful.

**Meeting at Healing Path with Defendant MAHONEY, Broker 1, Moore, and Other Employees**

Overt Act No. 6:   On October 1, 2020, defendant MAHONEY, Broker 1, and another individual who by then had become a cooperator

7

working with law enforcement, met at Healing Path to review the amounts of kickbacks owed to Brokers 1 and 2, based on the patients whom they and defendant PARKINSON had referred to Healing Path and Get Real the prior month.

Overt Act No. 7:   On October 1, 2020, defendant MAHONEY directed Broker 1 to terminate his broker relationship with defendant PARKINSON, specifically, defendant MAHONEY criticized Broker 1 for operating his body brokering business with defendant PARKINSON and, when Broker 1 responded that he needed defendant PARKINSON to ensure that Broker 1 had enough cash to pay kickbacks to patients, defendant MAHONEY responded, "That's something you can work on figuring out."

Overt Act No. 8:   On October 1, 2020, defendant MAHONEY directed Broker 1 to exercise more caution in operating the kickback scheme, namely, by defendant MAHONEY stating that Broker 1's body brokering organization was causing law enforcement to investigate their kickback conspiracy:  "They're kicking in doors.  Feds.  Darius [Moore] doesn't have any problems like that.  He placed 16 people last month plus everyone he placed in Get Real.  So he's at the point now that he places like 30 people in a month [at Healing Path and Get Real]."

Overt Act No. 9:   On October 1, 2020, defendant MAHONEY stated that, because of his concerns over law enforcement activity, defendant MAHONEY deleted his spreadsheet tracking kickbacks owed to body brokers referring patients to Healing Path and Get Real.

Overt Act No. 10:   On October 1, 2020, defendant MAHONEY paid a $60,000 kickback to Broker 1, via a check payable to Business A.

Overt Act No. 11:   On October 1, 2020, defendant MAHONEY paid a $25,000 kickback to Broker 2, via a check payable to Business C.

Overt Act No. 12:   On October 1, 2020, defendant MAHONEY paid Moore a $25,000 kickback payment on behalf of Get Real and a $20,000 kickback payment on behalf of Healing Path.

**Additional Kickbacks Paid by Defendant MAHONEY**

Overt Act No. 13:   On November 7, 2019, defendant MAHONEY paid defendant PARKINSON a $22,500 kickback.

Overt Act No. 14:   On November 12, 2019, defendant MAHONEY paid defendant PARKINSON a $22,500 kickback.

Overt Act No. 15:   On November 15, 2019, defendant MAHONEY paid defendant PARKINSON a $32,500 kickback.

Overt Act No. 16:   On November 27, 2019, defendant MAHONEY paid defendant PARKINSON a $22,500 kickback.

Overt Act No. 17:   On November 29, 2019, defendant MAHONEY paid defendant PARKINSON a $32,500 kickback.

Overt Act No. 18:   On October 8, 2020, defendant MAHONEY paid Moore $50,000 on behalf of Healing Path.

COUNTS TWO THROUGH EIGHT

[18 U.S.C. § 220(a)(2); 18 U.S.C. § 2]

[DEFENDANT MAHONEY]

10.   The Grand Jury realleges paragraphs 1 through 6 and 8 of this Indictment here.

11.   On or about the dates set forth below, in Orange County, California, within the Central District of California, and elsewhere, defendant CASEY MAHONEY, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully paid remuneration, including a kickback, bribe, and rebate, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, (1) to induce a referral of an individual to a recovery home and clinical treatment facility, and (2) in exchange for an individual using the services of a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|-------|------|---------|--------------------|
| TWO | 11/27/2019 | Check from Get Real payable to Star Treatment Solutions LLC | $22,500 |
| THREE | 11/29/2019 | Check from Healing Path payable to Star Treatment Solutions LLC | $32,500 |
| FOUR | 10/1/2020 | Check from Healing Path payable to Business A | $60,000 |
| FIVE | 10/1/2020 | Check from Healing Path payable to Business C | $25,000 |
| SIX | 10/1/2020 | Check from Healing Path payable to Moore Recovery Solutions LLC | $20,000 |

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|-------|------|---------|--------------------|
| SEVEN | 10/8/2020 | Check from Healing Path payable to Moore Recovery Solutions LLC | $50,000 |
| EIGHT | 10/15/2020 | Check from Get Real payable to Moore Recovery Solutions LLC | $45,000 |

COUNTS NINE AND TEN

[18 U.S.C. § 220(a)(1); 18 U.S.C. § 2]

[DEFENDANT PARKINSON]

12.   The Grand Jury realleges paragraphs 1 through 6 and 8 of this Indictment here.

13.   On or about the dates set forth below, in Orange County, California, within the Central District of California, and elsewhere, defendant JOSEPH PARKINSON, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully solicited and received remuneration, including a kickback, bribe, and rebate, namely, the following payments, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring a patient and patronage to a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce:

| COUNT | DATE | PAYMENT | APPROXIMATE AMOUNT |
|-------|------|---------|--------------------|
| NINE | 11/27/2019 | Check from Get Real payable to Star Treatment Solutions LLC | $22,500 |
| TEN | 11/29/2019 | Check from Healing Path payable to Star Treatment Solutions LLC | $32,500 |

COUNTS ELEVEN THROUGH THIRTEEN

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2]

[DEFENDANT MAHONEY]

14.  The Grand Jury re-alleges paragraphs 1 through 6 and 8 of this Indictment here.

15.  On or about the following dates, in Orange County, California, within the Central District of California, and elsewhere, defendant CASEY MAHONEY and others known and unknown to the Grand Jury, conducted, aided and abetted the conducting of, and willfully caused others to conduct, the following financial transactions affecting interstate and foreign commerce, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which transactions, in fact, involved the proceeds of specified unlawful activity, that is, Conspiracy to Pay, Offer, Solicit, and Receive Illegal Remunerations for Referrals to Clinical Treatment Facilities, in violation of Title 18, United States Code, Sections 371, 220(a)(1), and 220(a)(2), knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| ELEVEN | 8/3/2020 | Payment of check from Get Real to Broker 1's mother for $39,500, falsely labeled with the memo line "Consulting Fee" |
| TWELVE | 9/1/2020 | Payment of check from Get Real to Broker 1's mother for $21,500, falsely labeled with the memo line "Consulting Fee" |
| THIRTEEN | 10/1/2020 | Payment of check from Get Real to Broker 1's mother for $23,000, falsely labeled with the memo line "Consulting Fee" |

1          COUNTS FOURTEEN THROUGH TWENTY-FIVE

2       [31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

3                  [DEFENDANT PARKINSON]

4      16.   The Grand Jury re-alleges paragraphs 1 through 6 and 8 of

5 this Indictment here.

6      17.   On or about the following dates, in Orange County, within

7 the Central District of California, and elsewhere, defendant JOSEPH

8 PARKINSON and others known and unknown to the Grand Jury, aiding and

9 abetting each other, knowingly, and for the purpose of evading the

10 reporting requirements of Section 5313(a) of Title 31, United States

11 Code, and the regulations promulgated thereunder, structured,

12 assisted in structuring, and willfully caused to be structured, the

13 following transactions with domestic financial institutions, as part

14 of a pattern of illegal activity involving more than $100,000 in a

15 12-month period, and while violating another law of the United

16 States:

| COUNT | DATE | TRANSACTIONS |
|-------|------|--------------|
| FOURTEEN | 6/8/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| FIFTEEN | 6/16/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| SIXTEEN | 6/18/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $10,000 from Parkinson Account 2 |
| SEVENTEEN | 7/2/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $10,000 from Parkinson Account 2 |
| EIGHTEEN | 7/6/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |
| NINETEEN | 7/20/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |

| COUNT | DATE | TRANSACTIONS |
|-------|------|--------------|
| TWENTY | 7/22/2020 | Cash withdrawals of $5,500 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |
| TWENTY-ONE | 7/29/2020 | Cash withdrawals of $8,000 from Parkinson Account 1 and $10,000 from Parkinson Account 2 |
| TWENTY-TWO | 8/3/2020 | Cash withdrawals of $6,000 from Parkinson Account 1 and $9,500 from Parkinson Account 2 |
| TWENTY-THREE | 8/12/2020 | Cash withdrawals of $5,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| TWENTY-FOUR | 8/24/2020 | Cash withdrawals of $8,000 from Parkinson Account 1 and $9,000 from Parkinson Account 2 |
| TWENTY-FIVE | 9/8/2020 | Cash withdrawals of $8,000 from Parkinson Account 1 and $8,500 from Parkinson Account 2 |

COUNT TWENTY-SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT PARKINSON]

On or about September 24, 2020, in Orange County, within the Central District of California, defendant JOSEPH PARKINSON knowingly and intentionally possessed with intent to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2.    Any defendant, if so convicted, shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), a defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

17

1

2

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

3      1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States will seek

5  forfeiture as part of any sentence, pursuant to Title 18, United

6  States Code, Section 982(a)(1), in the event of any defendant's

7  conviction of any of the offenses set forth in any of Counts Eleven

8  through Thirteen of this Indictment.

9      2.  Any defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11      (a)  Any property, real or personal, involved in such

12  offense, and any property traceable to such property; and

13      (b)  To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16      3.  Pursuant to Title 21, United States Code, Section 853(p), as

17  incorporated by Title 18, United States Code, Section 982(b)(1), and

18  Title 18, United States Code, Section 982(b)(2), a defendant, if so

19  convicted, shall forfeit substitute property, if, by any act or

20  omission of the defendant, the property described in the preceding

21  paragraph, or any portion thereof: (a) cannot be located upon the

22  exercise of due diligence; (b) has been transferred, sold to, or

23  deposited with a third party; (c) has been placed beyond the

24  jurisdiction of the court; (d) has been substantially diminished in

25  value; or (e) has been commingled with other property that cannot be

26  divided without difficulty. Substitution of assets shall not be

27  ordered, however, where the convicted defendant acted merely as an

28  intermediary who handled but did not retain the property in the

18

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve-month period.

FORFEITURE ALLEGATION THREE

[31 U.S.C. § 5317]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 31, United States Code, Section 5317, in the event of any defendant's conviction of the offenses set forth in any of Counts Fourteen through Twenty-Five of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All property, real or personal, involved in the offense and any property traceable thereto; and

(b)   To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), a defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding, or any portion thereof; (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

//

//

//

1  jurisdiction of the court; (d) has been substantially diminished in

2  value; or (e) has been commingled with other property that cannot be

3  divided without difficulty.

4

5                                            A TRUE BILL

6

7                                            _____

8                                            Foreperson

9

10  TRACY L. WILKISON
    Acting United States Attorney
11

12

13  SCOTT M. GARRINGER
    Assistant United States Attorney
14  Chief, Criminal Division

15  BENJAMIN R. BARRON
    Assistant United States Attorney
16  Chief, Santa Ana Branch Office

17  JOSEPH S. BEEMSTERBOER
    Acting Chief, Fraud Section
18  U.S. Department of Justice

19  JUSTIN P. GIVENS
    Trial Attorney, Fraud Section
20  U.S. Department of Justice

21

22

23

24

25

26

27

28